**Jake J. DUHART, Plaintiff,**

v.

**Rita FRY, ind. and in her official capacity as Cook County Public Defender, Edwin Burnett, ind. and in his official capacity as First Assistant Cook County Public Defender, Shelton Green, ind., Su Horn, ind., and County of Cook, Defendants.**

**No. 96 C 3228.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1997.

Charmaine Elizabeth Dwyer, Chicago, IL, for Plaintiff.

Melissa K. Reardon Henry, John Justin Murphy, Jacob Maxwell Rubinstein, State's Attorney of Cook County, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants Rita Fry, Edwin Burnette [1], Shelton Green, Su Horn, and County of Cook's motion to dismiss

---

1. Edwin Burnette was incorrectly sued as "Edwin Burnett." The court will refer to Burnette using the proper spelling.

plaintiff Jake J. Duhart's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the court grants in part and denies in part defendants' motion.

## I. *BACKGROUND* [2]

Plaintiff Jake J. Duhart ("Duhart"), a black male, was hired by the Cook County Public Defender as a law clerk on November 1, 1990. He served in that position until approximately March 30, 1991. During that service, Duhart's supervisors, Ken Fletcher and defendant Su Horn ("Horn"), gave Duhart assignments that were less desirable than those offered to white law clerks.

On March 30, 1991, Duhart was offered a Grade II Assistant Public Defender position and was assigned to the Felony Division, Evening Narcotics Court. Although he requested a Grade III designation, he was told that he needed additional jury trial experience before he could obtain a Grade III designation.

Duhart's supervisors in the Evening Narcotics Court position were Phil Mullane ("Mullane") and Frank Marino ("Marino"). During Duhart's service in the Evening Narcotics Court position, Mullane and Marino consistently failed to provide Duhart with the training and professional development comparable to that which they gave Duhart's white peers. In August 1991, Duhart received a performance evaluation from Marino that contained a number of inaccuracies. While Marino gave evaluation interviews to white attorneys under his supervision, he failed to keep appointments with Duhart to discuss his evaluation. In June 1992, two white attorneys with less seniority than Duhart were transferred ahead of Duhart to the Day Division, which was a more desirable assignment. In August 1992, Mullane gave Duhart an inaccurate performance evaluation.

That same month, Duhart filed a grievance with his union, protesting the evaluation that he had received from Mullane and the fact that less senior white attorneys had been transferred to the Day Division. After filing this grievance, Duhart was transferred to the Day Division. After he was transferred to the Day Division, Duhart was not promoted to Grade III, although white attorneys with similar experience were promoted to Grade III soon after they were transferred to the Day Division. Then, in December 1992, Horn once again became Duhart's supervisor. In the spring of 1993, Horn gave Duhart a mediocre and inaccurate performance evaluation.

In May 1993, Duhart submitted a complaint of race discrimination to defendant Rita Fry ("Fry"). Fry did not take prompt remedial action. Rather, between May 1993 and March 1995, Duhart was repeatedly denied opportunities for training, transferred to undesirable courtrooms, and assigned caseloads that were far more demanding than those of his white peers.

In August 1993, Duhart met with defendant Edwin Burnette ("Burnette"), the First Assistant Cook County Public Defender, to discuss Duhart's complaints of discrimination. Burnette acknowledged that there was a problem of racism in the Cook County Public Defender's Office. Burnette also falsely told Duhart that he would assist Duhart in obtaining the training necessary to be promoted to Grade III or IV by January 1995. In February 1995, Duhart learned that throughout 1994, several white Grade II attorneys with similar or lesser qualifications had been promoted to Grade III while Duhart continued to be denied promotions.

In March 1995, Duhart was advised by his physician that his blood pressure had risen to an unhealthy level due to the ongoing discrimination by defendants. Duhart then resigned from the office. On September 15, 1995, Duhart filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Duhart a Notice of Right to Sue, which Duhart received on March 2, 1996.

On May 30, 1996, Duhart filed a *pro se* complaint against the Cook County Public Defender, alleging race discrimination in vio-

---

2. The facts are taken from Duhart's second amended complaint ("2d Am. Compl.") unless otherwise indicated and, for the purposes of this motion, are taken as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

lation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e–2000e–17. (Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss [hereinafter "Pl.'s Mem."] at 1.) Prior to serving the original complaint, Duhart filed an amended complaint against various defendants. The court dismissed the amended complaint with leave to file a second amended complaint. (*Id.* at 1–2).

On December 5, 1996, Duhart, through his attorney, filed a three-count second amended complaint. (*Id.*) Count I alleges violations of Title VII and is against Rita Fry in her official capacity as Cook County Public Defender and the County of Cook. Count II alleges violations of 42 U.S.C. § 1981. Count III alleges violations of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. Both Count II and Count III are against Fry individually and in her official capacity, Burnette individually and in his official capacity, Shelton Green individually, Horn individually, and the County of Cook. Defendants have moved the court to dismiss Duhart's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. *DISCUSSION*

### A. *Standard for deciding a motion to dismiss*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the case only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Challenges to Count I—Title VII claims*

#### 1. 300–day limitations period

Defendants first contend that Duhart is time-barred from basing his Title VII claims on any acts that occurred more than 300 days before the date on which Duhart filed his EEOC charge. Duhart filed his complaint with the EEOC on September 15, 1995. (*See* 2d Am. Compl. Count I ¶ 8; Ex. A.) Thus, according to defendants, Duhart cannot bring his complaint based on acts that took place prior to November 19, 1994.

■ It is true that a plaintiff in Illinois must file an EEOC charge within 300 days after the allegedly unlawful employment practice occurred. *Moore v. Allstate Ins. Co.,* 928 F.Supp. 744, 750 (N.D.Ill.1996) (citing *Koelsch v. Beltone Elec. Corp.,* 46 F.3d 705, 707 (7th Cir.1995)). What is also true, however, is that standard principles of limitations law, including the continuing violation theory, the discovery rule, equitable tolling, and equitable estoppel, apply to Title VII cases. *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir.1996).

#### a. Continuing violation doctrine

■ Duhart contends that he can base his claims on acts occurring prior to November 19, 1994, because he has pled sufficient facts to support a claim of a continuing violation. The continuing violation doctrine allows a plaintiff to base a claim on a time-barred act by linking the time-barred act with an act that is within the limitations period. *Moore,* 928 F.Supp. at 750. To succeed under the continuing violation theory, a plaintiff must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. *Id.* (citing *Young v. Will County Dep't of Pub. Aid,* 882 F.2d 290, 292 (7th Cir.1989)). If the plaintiff makes such a showing, the court will treat the combination of the acts as one continuous act within the limitations period.

*Id.* (citing *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992)).

Duhart has sufficiently alleged that certain discriminatory acts occurred within the 300–day period. For example, Duhart alleges that "from November 1990 through April 1995, Defendants ... subjected [him] to an ongoing pattern of intentional discrimination and disparate treatment." (2d Am. Compl.Count I ¶ 14.) Duhart also alleges that throughout his employment with the Cook County Public Defender, he repeatedly was denied opportunities for training, transferred to undesirable courtrooms, and assigned caseloads far more demanding than those assigned to his white peers. (*Id.* ¶¶ 14(H), (L).) Thus, the question is whether the court should apply the continuing violation doctrine to link the acts that allegedly took place prior to November 19, 1994, to the alleged acts that took place after November 19, 1994, which would allow Duhart to base his Title VII claim on all of those acts.

As the Seventh Circuit recently pointed out, the case law on the continuing violation doctrine is "complex and diffuse." *Galloway,* 78 F.3d at 1167. Recognizing this problem, the Seventh Circuit took the opportunity in *Galloway* to attempt to organize the case law and to clarify when a plaintiff should be allowed to invoke the continuing violation doctrine. *Id.* at 1165–67. The Seventh Circuit explained that the guiding principle in applying the continuing violation doctrine is that a Title VII plaintiff "may not base her ... suit on conduct that occurred outside the statute of limitations *unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct.*" *Id.* (emphasis added); *see also Selan,* 969 F.2d at 565–66; *Moore,* 928 F.Supp. at 751.

The Seventh Circuit explained that one type of case in which it would be unreasonable to expect the plaintiff to sue is when the conduct can be recognized as discrimination "only in the light of events that occurred later, within the period of limitations." *Id.* This is in contrast to a case where the plaintiff is subjected to a "long-continued series" of discriminatory acts that "definitely are a series, a pattern, and not merely a set of discrete events," but "it was evident long before the plaintiff finally sued" that he or she was the victim of unlawful discrimination. *Id.* In such a case, while the plaintiff can still sue "provided that the last of harassment occurred within the statute of limitations," the plaintiff "cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *Id.* That is, the plaintiff's lawsuit can be based only on the conduct that occurred within the limitation period. *See id.*

The court presented three reasons that justified preventing the plaintiff in the latter case from "reaching back" to the time-barred acts. *Id.* First, the plaintiff "had no excuse for waiting that long." *Id.* Second, the bringing of the suit is "almost certain to stop" the unlawful conduct; thus, the plaintiff "will not be put to the expense of bringing successive suits." *Id.* Finally, the plaintiff can "seek injunctive relief against a continuation of the unlawful conduct." *Id.*

In Duhart's second amended complaint, Duhart alleges that in August 1992, he "filed a grievance with his union protesting the evaluation he had received from Phil Mullane and the fact that less senior white attorneys had been transferred to Day Division." (2d Am.Compl. Count I ¶ 14(F).) Duhart further alleges that he "submitted a written complaint of race discrimination to Rita Fry in May, 1993." (*Id.* ¶ 14(J).) Finally, Duhart alleges that in August 1993, Duhart met with "Edwin Burnett[e] ... to discuss his [Duhart's] complaints of discrimination; Burnett[e] acknowledged that there was racism in the Office of the Cook County Public Defender." (*Id.* ¶ 14(K).)

Based on the above allegations, which are assumed true for the purposes of this motion, the court finds that the continuing violation doctrine does not apply in Duhart's case. It is clear that as of at least August 1993, after Duhart had filed the written complaint of discrimination with Fry and after Duhart had spoken with Burnette, Duhart believed that he was the victim of racial discrimination. Thus, it was evident long before Duhart filed his complaint with the EEOC on September 15, 1995, that he believed he was the victim of racial discrimination. At the point in 1992 or 1993 that Duhart believed he was a victim

of racial discrimination, it would not have been unreasonable to expect Duhart to file an EEOC charge before the 300–day time limitation period ran on the conduct. Accordingly, while Duhart is free to base his Title VII claims on conduct that occurred after November 19, 1994, he cannot avail himself of the continuing violation theory in order to reach back and base his suit on conduct that occurred before that date.

Duhart relies on this court's decision in *Moore* to support his contention that the continuing violation doctrine applies in this case. In *Moore*, the plaintiff sued her employer, claiming, among other things, that the employer had discriminated against her on the basis of her race in violation of Title VII. *Moore*, 928 F.Supp. at 748. The defendant moved to dismiss the plaintiff's Title VII claims pursuant to Rule 12(b)(6), claiming that the plaintiff was barred from basing any of her claims on acts that occurred more than 300 days before the date on which the plaintiff had filed her EEOC charge. *Id.* at 750.

The court denied the defendant's motion, finding that the plaintiff had sufficiently alleged a continuing violation. *Id.* at 752. The plaintiff's complaint alleged that the company had given her unfavorable performance evaluations and had not promoted and compensated her fairly because of her race. *Id.* at 751. The complaint did not allege that the plaintiff had ever filed a written complaint of racial discrimination prior to filing her EEOC charge. Rather, the complaint alleged that when the plaintiff had asked the defendant why she had received poor performance evaluations, the defendant justified the evaluation with nondiscriminatory reasons. *Id.* Based on these allegations, the court found that none of the defendant's alleged discriminatory acts should have put the plaintiff on notice that her rights were being violated. *Id.* at 752. The court determined that "it is quite conceivable that [the plaintiff] would have 'no reason to believe that

[she] was a victim of discrimination' until she received enough poor evaluations and was not promoted enough times that she became aware of a 'visible pattern of discriminatory treatment.'" *Id.* (citations omitted).

*Moore* is distinguishable from Duhart's case. In *Moore*, the plaintiff did not allege that she had ever filed a written complaint of racial discrimination prior to filing her EEOC charge. In contrast, Duhart alleges that he submitted a written complaint of racial discrimination to Fry in May 1993. (2d Am.Compl.Count I ¶ 14(J).) Further, in *Moore*, the company gave the plaintiff nondiscriminatory reasons for why it had given her the poor performance evaluation. In contrast, in the present case, Duhart alleges that when he spoke with Burnette, Burnette acknowledged that there was a problem of racism in the Cook County Public Defender's Office. (*Id.* ¶ 14(K).) Thus, in contrast to *Moore*, in Duhart's case, as of at least August 1993, it is inconceivable that Duhart did not believe that he was a victim of discrimination. *See Vitello v. Liturgy Training Publications*, 932 F.Supp. 1093, 1098 (N.D.Ill.1996) (finding that the plaintiff could not invoke the continuing violation doctrine because the fact that the plaintiff had previously filed an EEOC charge alleging discrimination proved that he was aware that he had been a victim of discrimination). Therefore, while Duhart can maintain a Title VII action against defendants with respect to those acts that fall within the 300–day limitations period, Duhart cannot base his claims on acts that took place before November 19, 1994, unless those claims are not time-barred due to the operation of the discovery rule, equitable tolling, or equitable estoppel.[3]

### b. The discovery rule, equitable tolling, and equitable estoppel

Duhart next argues that he has alleged facts "which may allow him to establish that the doctrines of equitable estoppel, equitable tolling or the 'discovery rule' stopped the

---

**3.** Because of the court's decision that the continuing violation doctrine is not applicable in this case, the court need not address defendants' argument that Duhart is precluded from invoking the continuing violation doctrine due to the fact that Duhart failed to check the "continuing viola-

tion" box on his EEOC charge. The court, however, should note that "[w]hat boxes ... are checked on the EEOC form does not necessarily control the scope of a subsequent civil complaint." *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir.1993).

applicable statute of limitations from running" on the acts which took place prior to November 19, 1994. (Pl.'s Mem. at 9.)

### (1) The discovery rule

■■■ Duhart argues that he has alleged sufficient facts to allow him to prove that the discovery rule prevents his claims based on conduct that occurred before November 19, 1994, from being time-barred. A statute of limitations begins to run on the date the cause of action accrues. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). According to the discovery rule, a cause of action accrues on the date on which the plaintiff discovers or should have discovered that he has been injured. *See id.* at 450–51; *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.), *cert. denied,* 513 U.S. 872, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994). Thus, the statute of limitations begins to run when a person knows or should know of the act that gives rise to the injury, not when the person realizes that he may have a legal claim arising out of the injury. *See Cada,* 920 F.2d at 449; *Jones,* 844 F.Supp. at 440.

Under the discovery rule, the 1994 promotions of allegedly less qualified white attorneys of which Duhart learned in February 1995 are not time-barred because Duhart did not discover his injury until 1995. (2d Am. Compl.Count I ¶ 14(M).) However, the discovery rule does not save the claims based on the specific conduct alleged in paragraphs 14(A–G) and 14(J–K), and on any acts alleged in paragraphs 14(H–I) and 14(L) that occurred prior to November 19, 1994, because Duhart plainly knew about such conduct and acts when they happened. Thus, the discovery rule operates to save only those claims that are based on injuries that Duhart discovered or should have discovered on or after November 19, 1994. That is, Duhart may base his Title VII claim only on the portion of the conduct alleged in paragraphs 14(H–I) and 14(L) about which he knew or should have known on or after November 19, 1994.

### (2) Equitable tolling

■■■ Duhart also tries to save his claims based on conduct that occurred prior to November 19, 1994, by arguing that the doctrine of equitable tolling may be applicable. Equitable tolling applies when, despite all due diligence, the plaintiff is unable to obtain enough information to conclude that he may have a discrimination claim within the relevant limitations period. *Cada,* 920 F.2d at 451. The doctrine does not assume that the defendant made any effort to prevent the plaintiff from suing. *Id.* Rather, it assumes only that the plaintiff was aware of his injury, but for some reason could not "obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.*

The complaint unequivocally indicates that as of August 1993 Duhart had enough information to indicate wrongdoing by defendants. At that point, he had not only submitted a written complaint of race discrimination to Fry, but he had also spoken with Burnette, who had admitted that there was a problem with racism in the Cook County Public Defender's Office. Thus, the doctrine of equitable tolling is not applicable.

### (3) Equitable estoppel

■■■ Duhart next argues that the doctrine of equitable estoppel might save his claims. Specifically, Duhart argues that equitable estoppel "may be applicable since Duhart alleges that he received assurances in August 1993 from Edwin Burnette that he would receive training which would enable him to be promoted by January 1995." (Pl.'s Memo. at 9.)

■■■ The doctrine of equitable estoppel may preclude the defendant from pleading a statute of limitations defense in a case where the defendant has engaged in some type of affirmative conduct in an effort to prevent the plaintiff from suing in time. *Cada,* 920 F.2d at 450. Equitable estoppel is applicable only where the plaintiff can show that his untimely filing resulted from "either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 292 (7th Cir.1986). The classic example of a case for equitable estoppel is where the defendant

promises the plaintiff that he will not plead the statute of limitations as a defense if the plaintiff delays filing his claim. *Cada,* 920 F.2d at 452.

 The granting of equitable estoppel should be premised upon "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant or of the defendant's deceptive nature of its conduct." *Mull,* 784 F.2d at 292. The defendant's deceptive conduct must be aimed at accomplishing a delay in filing; thus, acts that are merely designed to mitigate the adverse impact of the employment do not justify the granting of equitable estoppel. *Id.* Equitable estoppel does not affect accrual; rather, equitable estoppel simply stops the statute of limitations from running while the tolling condition is in effect. *Cada,* 920 F.2d at 452.

The allegation in Duhart's complaint that in August 1993 Burnette "falsely represented to Duhart that he would assist him in training so that he would be promoted to Grade III or Grade IV by January 1995" is insufficient to warrant granting equitable estoppel. While a plaintiff is entitled to all reasonable inferences that can be drawn from the complaint's allegations, the court is not required to strain to find favorable inferences that are not apparent on the face of the complaint. *Bright v. Roadway Servs. Inc.,* 846 F.Supp. 693, 699 (N.D.Ill.1994) (citing *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir.1977)). Duhart's contention that equitable estoppel may apply not only asks the court to strain to find reasonable inferences that are not apparent on the face of the complaint, it also asks the court to draw unreasonable inferences as well.

Duhart alleges that Burnette admitted to Duhart that there was a problem of racism in the Cook County Public Defender's Office after which he allegedly made the promise to provide Duhart with the necessary training. The court notes that Duhart does not allege that Burnette made the alleged promise to Duhart in an effort to lull him into sleeping on his rights or that Duhart relied on that promise in any way. Thus, in order to find that equitable estoppel saves Duhart's claims, the court must rely on the inferences that can be drawn from Burnette's alleged promise to Duhart.

The reasonable inference from the allegation is that Burnette was attempting to ameliorate the adverse impact that the previous racially discriminatory employment decisions had on Duhart. As previously mentioned, equitable estoppel does not apply in such a case. *See Mull,* 784 F.2d at 292. Moreover, it is a strain to construe these allegations to imply that Burnette admitted that there was racism in the office and then promised to train Duhart in an effort to keep Duhart from suing the Public Defender's Office and Cook County later.

In addition to inferring that Burnette made the promise in order to prevent Duhart from suing, the court also would have to infer that Duhart actually did not file his EEOC charge because he relied on Burnette's offer to train him and that such reliance was objectively reasonable. Given the magnitude of discrimination to which Duhart was allegedly subjected from November 1990 until the conversation with Burnette in August 1993, it would not have been objectively reasonable for Duhart not to file his EEOC charge simply because of Burnette's promise.

 Finally, even if the court inferred that Duhart had reasonably relied on Burnette's promise, equitable estoppel would not be justified unless the court found that Duhart's reliance continued until November 19, 1994, because equitable estoppel only stops the statute of limitations from running while the tolling condition is in effect. It is not reasonable to infer from the allegations that Duhart could have relied on Burnette's promise until November 19, 1994. It must have been apparent to Duhart by November 19, 1994, that Burnette had lied when he said he would assist Duhart in obtaining the training necessary to be promoted by January 1995. In such a case, the statute of limitations would have started to run again when Duhart realized that Burnette had lied, which must have been before November 19, 1994.

For the foregoing reasons, Duhart cannot base his Title VII claim on acts that occurred and of which Duhart was or should have been

aware prior to November 19, 1994. This includes the specific conduct alleged in paragraphs 14(A–G) and 14(J–K) of Duhart's complaint and those acts included in the general allegations of paragraphs 14(H–I) and 14(L) that occurred and of which Duhart was or should have been aware prior to November 19, 1994. Duhart, however, is free to pursue his Title VII claims based on acts encompassed by the general allegations of paragraphs 14(H–I) and 14(L) that occurred on or after November 19, 1994, or that occurred prior to that date but of which he only became or should have become aware on or after that date.

### 2. Alleged facts and the scope of Duhart's EEOC charge

■ Defendants next argue that the court should dismiss Count I insofar as it alleges claims that are outside the scope of Duhart's EEOC charge. Specifically, defendants contend that Duhart's claims based on the allegations that he was repeatedly denied opportunities for training, transferred to undesirable courtrooms, and given an overly demanding case load (2d Am.Compl. Count I ¶ 14(H, L)) are outside the scope of Duhart's EEOC charge.[4]

■ The general rule is that a Title VII plaintiff may bring only those claims that were included in his EEOC charge. *McKenzie v. Illinois Dep't of Trans.*, 92 F.3d 473, 481 (7th Cir.1996). "This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against it." *Moore*, 928 F.Supp. at 748 (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992)).

Duhart's EEOC charge alleged that defendants discriminated against Duhart on the basis of his race, subjected Duhart to a hostile work environment, and retaliated against Duhart after he had complained of race discrimination in May 1993. (*Id.* Ex. A.) Specifically, Duhart alleges that other less qualified

white attorneys were promoted ahead of him and that he was subjected to a hostile work environment, which led to his constructive discharge. (*Id.*) Duhart, however, did not explicitly mention in his EEOC charge that he was repeatedly denied opportunities for training, transferred to undesirable courtrooms, and given an overly demanding case load.

■ A plaintiff, however, may bring claims not explicitly included in his EEOC charge if: (1) the claims are like or reasonably related to the allegations in the EEOC charge and (2) the claims grow out of the allegations made in the EEOC charge. *Moore*, 928 F.Supp. at 749. The complaint's claims and the allegations in the EEOC charge are reasonably related if there is a factual relationship between them. *Harper v. Godfrey*, 45 F.3d 143, 148 (7th Cir.1995). At a minimum, this requires that the charge and complaint describe the same conduct and implicate the same individuals. *Id.* Further, the court should consider whether the complaint's claims and the EEOC charge cover the same time period. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

*Moore* is particularly relevant to issue before the court. In *Moore*, the plaintiff's EEOC charge alleged that she had received a negative performance evaluation and that the employer's proffered justification was a pretext for race-based discrimination. *Id.* The plaintiff's amended complaint alleged that the employer discriminated against the plaintiff by giving her poor performance evaluations, failing to promote her, and depriving her of other job opportunities and privileges because of her race. *Id.* The court found that the allegations in the plaintiff's complaint were reasonably related to and grew out of the allegations in the plaintiff's EEOC charge. *Id.* at 750.

First, the court found that the EEOC charge and the complaint were factually related in that "both describe the same con-

---

**4.** Defendants also argue that claims based on the conduct alleged in paragraphs 14(A–E) and 14(G) of Count I are outside of the scope of Duhart's EEOC charge. The court, however,

need not address this argument because the court finds that the claims based on the conduct alleged in those paragraphs are time-barred.

duct—discrimination in employment based on Moore's race—involving the same persons—Allstate and its employees who have control over Moore's performance evaluations and job opportunities." *Id.* at 749. Second, the court found that the complaint's claims grew out of the allegations in the EEOC charge. *Id.* The court explained that "[i]t is simple logic that in any job, performance evaluations, compensation, and other job opportunities and benefits are intertwined; each affects or is affected by the others." *Id.* Thus, the court concluded that the plaintiff's claims "reasonably could be expected to grow out of the EEOC's investigation of her charge alleging discrimination in her September 1993 performance evaluation." *Id.*

The current case is analogous to *Moore*. First, in *Moore*, the court found that the claims in plaintiff's complaint that the defendant had given her poor evaluations, failed to promote her, and deprived her of other job opportunities were reasonably related to her EEOC allegations that she had received a poor performance evaluation due to her race because both described the same conduct and involved the same people. Similarly, Duhart's claims that he was denied training opportunities, assigned to undesirable courtrooms, and given heavier caseloads is reasonably related to Duhart's EEOC charge's allegation that defendants failed to promote him due to his race and then retaliated against him. Both the complaint and the charge describe the same conduct—race-based discrimination and retaliation—involving the same individuals—the Cook County Public Defender's Office and its supervisors.

Second, in *Moore*, the court found that the complaint's claims grew out of the allegations in the EEOC charge because "in any job, performance evaluations, promotions, compensation, and other job opportunities and benefits are intertwined." Similar to *Moore*, in Duhart's case, the claims that he was denied training opportunities, assigned to undesirable courtrooms, and given heavier caseloads could reasonably be expected to grow out of the EEOC's investigation. All of this conduct is intertwined with the allegations in Duhart's EEOC charge that defendants

failed to promote Duhart, retaliated against him after he complained of race discrimination in May 1993, and subjected him to a racially hostile environment. *See Rush*, 966 F.2d at 1111 (finding that the plaintiff's claims that the defendant had denied her benefits and maintained a discriminatory promotion policy, which were not included in her EEOC charge, were not outside of the charge because the claims were derivative of her EEOC charge's allegation that the defendant had denied her a promotion based on her race).

It is true that Duhart is a licensed attorney; thus, it could be argued that he should have known to include these allegations in his EEOC charge. The court notes, however, that although Duhart is an attorney, he has practiced solely in the area of criminal law since at least November 1, 1990. That Duhart needed help from another lawyer to assert properly his claims is evidenced by the fact that his first amended complaint, which he prepared, was dismissed (*see* Minute Order dated November 16, 1996) and that he had to retain counsel to prepare and represent him in the litigation on his second amended complaint.

Moreover, the court finds that in this case the relationship between the charges "is so related and intertwined in time, people and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes" of Title VII. *Kristufek*, 985 F.2d at 368. In this case, Duhart's EEOC charge provided notice to the Cook County Public Defender's Office of the charges against it and also provided the EEOC the opportunity to settle the dispute. In addition, defendants have in no way claimed that they were prejudiced by Duhart's limited EEOC charge. *See id.* at 369.

Accordingly, the court finds that Duhart's claims that defendants denied him training opportunities, assigned him to undesirable courtrooms, and gave him heavier caseloads are not beyond the scope of Duhart's EEOC charge.

### C. Challenges to Count II—section 1981 claim and Count III—section 1983 claim

#### 1. Statute of limitations

Defendants first challenge Duhart's section 1981 and section 1983 claims as untimely. Defendants contend that Duhart is time-barred from basing either claim on any acts that occurred more than two years before the date on which Duhart filed his initial complaint, May 30, 1996. Defendants correctly state that in Illinois, the statute of limitations for section 1981 and section 1983 actions is two years. *Palmer v. Board of Educ. of Community Unit Sch. Dist. 201–U,* 46 F.3d 682, 684 (7th Cir.1995) (section 1983); *Jones v. Citibank, Fed. Sav. Bank,* 844 F.Supp. 437 (N.D.Ill.1994) (section 1981). Thus, according to defendants, Duhart cannot base his section 1981 or section 1983 claim on acts that occurred prior to May 30, 1994.

Duhart does not make any new arguments for why his section 1981 and section 1983 claims are timely. Rather, he simply asserts that "[t]he continuing violation, equitable estoppel, equitable tolling and/or discovery rule doctrines discussed above with respect to Count I are equally applicable" to these claims and therefore "should permit him to pursue his claims for acts occurring prior to May 30, 1994." (Pl.'s Mem. at 10.)

For the reasons discussed above, the court finds that the continuing violation theory, equitable estoppel, and equitable tolling do not apply to Duhart's section 1981 and section 1983 claims. In addition, the discovery rule does not allow Duhart to base his claims on the specific acts alleged in paragraphs 13(A–G) and 13(J–K) or on the conduct alleged in paragraphs 13(H–I) and 13(L) that occurred and about which Duhart knew or should have known prior to May 30, 1994. Thus, Duhart cannot base his section 1981 and section 1983 claims on any acts that occurred and of which Duhart was or should have been aware prior to May 30, 1994. However, Duhart is free to pursue his sections 1981 and 1983 claims based on the acts alleged in paragraphs 13(H–I) and 13(L) that occurred and about which he knew or should have known on or after May 30, 1994.

#### 2. Claims against Su Horn

Defendants next argue that the court should dismiss Horn as a defendant in Counts II and III because those counts do not allege a single discriminatory act within the applicable statute of limitations. The only allegations against Horn are the allegations in paragraphs 13(A), 13(G), and 13(L). Because claims based on paragraphs 13(A) and 13(G) are time-barred, Horn can only remain in the action if the allegation in paragraph 13(L) is sufficient to state a cause of action against her. Paragraph 13(L) alleges the following:

> Between May, 1993 and March, 1995, Duhart, due to the conduct of and/or with the knowledge and approval of Defendants, Rita Fry, Edwin Burnette, Su Horn, and Shelton Green, Duhart repeatedly was denied opportunities for training, transferred to undesirable courtrooms and assigned caseloads which were far more demanding than those of his white counterparts.

(2d Am.Compl. Count II ¶ 13(L); Count III ¶ 13(L) (emphasis added)).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County, Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). As the Supreme Court stated in *Conley v. Gibson* and reiterated in *Leatherman,*

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. at 103). Accordingly, the court will read the plaintiff's complaint liberally and will "accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations."

*Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 791 (7th Cir.1996).

Reading Duhart's complaint liberally, the court finds that Duhart has alleged sufficient facts to survive defendants' Rule 12(b)(6) motion to dismiss Horn as a defendant. While paragraph 13(L) of Counts II and III alleges conduct that occurred both inside and outside the statute of limitations, at this stage, the court cannot say that Duhart can prove no set of facts that would entitle him to relief and are consistent with the allegations. *See Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). Thus, defendants' Rule 12(b)(6) motion to dismiss Horn as a defendant is denied.

### D. Preemption challenge to Count III— section 1983 claim

■ The substantive basis of Count III is that defendants intentionally deprived and interfered with "Duhart's federally protected right to equal protection under the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America." (2d Am.Compl. Count III ¶ 7.) Defendants argue that the court should dismiss Count III because allegations of employment discrimination that form the basis of a Title VII claim cannot also form the basis of a second claim under section 1983. The court rejects this argument.

Prior to the 1991 Civil Rights Act, the established law in the Seventh Circuit was that Title VII did not preempt a plaintiff's section 1983 claim for a constitutional violation. *See, e.g., Waid v. Merrill Area Pub. Schs.,* 91 F.3d 857, 862 (7th Cir.1996); *Trigg v. Fort Wayne Community Schs.,* 766 F.2d 299, 301 (7th Cir.1985). This position was "consistent with the great weight of authority." *Trigg,* 766 F.2d at 302 (citations omitted).

The Seventh Circuit has not expressly considered the implications of the 1991 Act on this rule of law; however, the Fourth Circuit and several district courts have. Those courts have uniformly held that the 1991 Act did not change the rule that Title VII does not preempt a plaintiff's section 1983 claims for a constitutional violation. *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994); *Car-*

*penter v. City of Northlake,* 948 F.Supp. 759, 762 (N.D.Ill.1996); *Blatnicky v. Village of Shorewood,* 1995 WL 493474, at *5–6 (N.D.Ill. Aug.16, 1995); *Houck v. City of Prairie Village,* 912 F.Supp. 1438, 1443 (D.Kan.1996); *Ribot Espada v. Woodroffe,* 896 F.Supp. 69, 71 (D.P.R.1995); *Mummelthie v. City of Mason City,* 873 F.Supp. 1293, 1323 (N.D.Iowa 1995), *aff'd,* 78 F.3d 589 (8th Cir.1996); *Stoner v. Department of Agric.,* 846 F.Supp. 738, 739–42 (W.D.Wis.1994). The court agrees with this conclusion. Accordingly, the court rejects defendants' preemption argument and denies defendants' motion to dismiss Count III of Duhart's complaint on that ground.

### E. Challenge to the sufficiency of Duhart's pleading of a hostile environment claim

■ Defendants' final argument is that Duhart has not alleged sufficient facts to support a claim of a racially hostile environment. The gist of defendants' argument is that Duhart does not have a hostile environment claim because Duhart has not alleged that anyone in the Cook County Public Defender's Office ever directed a racial epithet or slur at Duhart.

The Supreme Court has recognized that Title VII allows a cause of action for racial harassment that creates a hostile or offensive working environment. *Meritor Sav. Bank FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). Racial harassment can also form the basis of a section 1981 claim. *North v. Madison Area Ass'n for Retarded Citizens–Developmental Centers,* 844 F.2d 401, 408 (7th Cir.1988). Actionable harassment "encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment." *McKenzie,* 92 F.3d at 479; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994).

There is no requirement that the hostile environment claim be based on verbal insults, slurs, or derogatory remarks; rather, a hostile environment claim can be based on either verbal or nonverbal behavior. *Carr v. Alli-*

son *Gas Turbine Div. Gen. Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994); *Feltner v. Partyka,* 945 F.Supp. 1188, 1195 (N.D.Ind. 1996); *Zorn v. Helene Curtis Inc.,* 903 F.Supp. 1226, 1239 (N.D.Ill.1995); *Al–Dabbagh v. Greenpeace, Inc.,* 873 F.Supp. 1105, 1111 (N.D.Ill.1994). As long as the plaintiff's "working conditions have been discriminatorily altered" because of membership in a protected category, Title VII is implicated. *Curde v. Xytel Corp.,* 912 F.Supp. 335, 340 (N.D.Ill.1995); *see R.R. Donnelley & Sons,* 42 F.3d at 443.

In this case, Duhart has alleged that defendants' conduct "substantially interfered with [his] employment and created an intimidating, hostile and offensive work environment." (2d Am.Compl.Count I ¶ 16; Count II ¶ 15). Duhart based this hostile environment claim on his allegations that defendants repeatedly denied him promotions and training, assigned him to undesirable courtrooms, and gave him more demanding caseloads than his white peers. Under notice-pleading standards, Duhart has alleged sufficient facts to survive a Rule 12(b)(6) challenge to his hostile environment claim.

### III. *CONCLUSION*

For the reasons set forth above, the court grants in part and denies in part defendants' motion to dismiss, as follows:

1. The court grants defendants' motion to dismiss Count I—Duhart's Title VII claims—insofar as the claims are based on the specific conduct alleged in paragraphs 14(A–G) and 14(J–K), and on any conduct alleged in paragraphs 14(H–I) and 14(L) that occurred and of which Duhart was or should have been aware prior to November 19, 1994.

2. The court grants defendants' motion to dismiss Counts II and III—Duhart's section 1981 and 1983 claims—insofar as the claims are based on the specific conduct alleged in paragraphs 13(A–G) and 13(J–K), and on any conduct alleged in paragraphs 13(H–I) and 13(L) that occurred and of which Duhart was or should have been aware prior to May 30, 1994.

3. The court denies defendants' motion to dismiss in all other respects.