Rochelle GALLOWAY, Plaintiff–
Appellant,

v.

GENERAL MOTORS SERVICE PARTS
OPERATIONS, Defendant–Appellee.

No. 94–3993.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1996.

Decided March 5, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied April 3, 1996.

Rochelle Galloway, Chicago, IL, for Plaintiff–Appellant.

Michael A. Warner, Kristin E. Michaels (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee.

Gwendolyn Young Reams, Carolyn L. Wheeler, James R. Neely, Jr., Paula R. Bruner (argued), Gail S. Coleman, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, for Equal Employment Opportunity Commission, Amicus Curiae.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

POSNER, Chief Judge.

Rochelle Galloway, a packer in the parts department of General Motors, complains that by failing to protect her from sexual harassment by a coworker named Bullock, General Motors discriminated against her on the basis of her sex, in violation of Title VII. The district judge granted summary judgment for the defendant and Galloway appeals pro se, seconded by the Equal Employment Opportunity Commission, which has filed a brief as amicus curiae.

Back in 1985 and 1986, Galloway and Bullock had a romantic relationship. It soured and beginning in 1987 and continuing until she quit General Motors in 1991 Bullock repeatedly called her a "sick bitch," the "sick" apparently a reference to the fact that in 1986 and again in 1987 Galloway was hospitalized for a psychiatric disorder. Once in 1988 Bullock remarked to Galloway, "If you don't want me, bitch, you won't have a damn thing," and once in 1990 he made an obscene gesture at her and said, "suck this, bitch." The judge ruled that any acts of harassment committed prior to January 22, 1991, the three hundredth day before Galloway filed her charge of sex discrimination with the EEOC, were time-barred. That left only some repetitions of "sick bitch" as the basis for her case and these, the judge held, were not enough to make Galloway's working environment objectively hostile to her as a woman. He added that the term "sick bitch" was "not overtly sexual in nature" and that Galloway's own coarse remarks to Bullock and others, such as her statement to him to "take that nasty dick and stick it in [your] momma's mouth," indicated that she probably wasn't much upset by his allegedly harassing behavior.

The EEOC's brief takes aim at the judge's ruling with respect to the statute of limitations, arguing that in the case of a continuing violation, conduct outside the statute of limitations but related in some way to conduct within it is nevertheless actionable. The question when conduct occurring outside the statute of limitations may, by virtue of its link with recent conduct, be made a basis for a legal claim is a vexing one, and not only in cases of sexual harassment. See, e.g., *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558–59, 97 S.Ct. 1885, 1889–90, 52 L.Ed.2d 571 (1977); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707–08 (7th Cir.1995); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 532 n. 11 (7th Cir.1993); *Selan v. Kiley*, 969 F.2d 560, 565–67 (7th Cir.1992); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989); *Young v. Will County Dept. of Public Aid*, 882 F.2d 290, 292–93 (7th Cir.1989); *Taylor v. Meirick*, 712 F.2d 1112, 1118–19 (7th Cir.1983); *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754–56 (3d Cir.1995). We shall take this opportunity to attempt a clarification.

We begin by reminding that the Supreme Court has told us *not* to interpret statutes of limitations in a grudging, hostile fashion. E.g., *Board of Regents v. Tomanio*, 446 U.S. 478, 487–88, 100 S.Ct. 1790, 1796–97, 64 L.Ed.2d 440 (1980); *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979). They serve the important purpose of encouraging the prompt filing of claims and by doing so of enhancing the likelihood of accurate determinations and removing debilitating uncertainty about legal liabilities. *Cada v. Baxter*

*Healthcare Corp.,* 920 F.2d 446, 452–53 (7th Cir.1990). At argument the EEOC's lawyer told us that if Bullock's campaign of harassment against the plaintiff had begun twenty years ago, the plaintiff would be entitled to seek redress for acts that had occurred that long ago, notwithstanding the difficulty that a trier of fact would encounter in trying to make accurate, credible factual determinations concerning events that had occurred so far in the past. *Krist v. Eli Lilly & Co.,* 897 F.2d 293 (7th Cir.1990). We do not think that the Commission's position can be right. It gives too little weight to the social interest in the prompt filing *especially* of suits charging employment discrimination. The statute of limitations for filing a Title VII charge with the EEOC (a prerequisite to suit) is 300 days at the outside, and in some states only 180 days. These periods are shorter than the usual statute of limitations and doctrines that would elongate the limitations period by as many as forty times (20 years ÷ 180 days = 40) are suspect.

■ What is true is that standard principles of limitations law, notably the discovery doctrine and the doctrines of equitable estoppel and equitable tolling, excuse the claimant from having to file before it is feasible for him to do so, and these principles apply to cases brought under Title VII. The Supreme Court so held in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982), and while some decisions seem not to heed this holding, see, e.g., *Chapman v. Homco, Inc.,* 886 F.2d 756, 758 (5th Cir.1989) (per curiam); *Merrill v. Southern Methodist University,* 806 F.2d 600, 605 (5th Cir.1986), ours do. *White v. Bentsen,* 31 F.3d 474, 475 (7th Cir. 1994); *Selan v. Kiley, supra,* 969 F.2d at 564; *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1143–44 (7th Cir.1992); *Brennan v. Daley,* 929 F.2d 346, 349 (7th Cir.1991); *Cada v. Baxter Healthcare Corp., supra,* 920 F.2d at 452–53. See also *Hamilton v. 1st Source Bank,* 895 F.2d 159, 163–64 (4th Cir. 1990).

■ We have not recognized an exception to these meliorative doctrines for sexual harassment. *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994); cf. *Jones v. Merchants National Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir.1994). Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event. In its early stages it may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, *Baskerville v. Culligan International Co.,* 50 F.3d 428, 431 (7th Cir.1995), or may not cause sufficient distress to be worth making a federal case out of, or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures. (And such knowledge and such failure normally are prerequisites to the employer's being made liable for the harassment. *Id.* at 431; *Carr v. Allison Gas Turbine Division,* 32 F.3d 1007, 1012 (7th Cir. 1994); *Saxton v. American Tel. & Tel. Co., supra,* 10 F.3d at 535; *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990).) We do not want to encourage premature or precipitate litigation. If the victim of sexual harassment sues as soon as the harassment becomes sufficiently palpable that a reasonable person would realize she had a substantial claim under Title VII, then she sues in time and can allege as unlawful conduct the entire course of conduct that in its cumulative effect has made her working conditions unbearable. We emphasize the bearing on this principle of the safe harbor that we created in *Baskerville* for employers accused of failing to prevent low-level harassment. The effect of that decision is that victims of harassment will often be required to wait and see whether the harassment persists or escalates to a level at which the ship leaves the harbor.

■ The concept of *cumulation* suggests a critical limiting principle. Acts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations. *Koelsch v. Beltone Electronics Corp., supra,* 46 F.3d at 707. If in Year 1 an employee is obnoxiously solicited for sexual favors by Coworker X and in Year 20 she is subjected to repulsive

sexual innuendoes by Coworker Y she cannot base a claim of sexual harassment on X's act, for no reasonable person in the victim's position would suppose that she could not have recognized that she was a victim of sexual harassment in Year 1 until Y's act in Year 20 or that it is only the addition of Y's act to X's act that puts her across the threshold that separates the merely vulgar, sporadic, and annoying and therefore not actionable from the seriously harassing (perhaps through dint of repetition) and therefore actionable.

The most difficult case arises when a long-continued series of harassing acts definitely *are* a series, a pattern, and not merely a set of discrete events, yet it was evident long before the plaintiff finally sued that she was the victim of actionable harassment. It seems to us that in such a case, while she can still sue provided that the last act of harassment occurred within the statute of limitations, she cannot reach back and base her suit also on conduct that occurred outside the statute of limitations; for she had no excuse for waiting that long. *Doe v. R.R. Donnelley & Sons Co., supra,* 42 F.3d at 446; *Selan v. Kiley, supra,* 969 F.2d at 565–66. An additional consideration is that the bringing of the suit is almost certain to stop the harassment, so that unlike certain cases of nuisance the plaintiff will not be put to the expense of bringing successive suits. What is more, she can always seek injunctive relief against a continuation of the unlawful conduct. *Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230, 238 (7th Cir.1994); *Townsend v. Indiana University,* 995 F.2d 691, 692–93 (7th Cir. 1993); *Bundy v. Jackson,* 641 F.2d 934, 946 (D.C.Cir.1981).

The principle that we extract from this discussion and that we think organizes the complex and diffuse case law on continuing violations under Title VII is that the plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations. See *Doe v. R.R. Donnelley & Sons Co., supra,* 42

F.3d at 446; *Selan v. Kiley, supra,* 969 F.2d at 565–66; *Brennan v. Daley, supra,* 929 F.2d at 349; *Martin v. Nannie & Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir.1993); *Sabree v. United Brotherhood of Carpenters,* 921 F.2d 396, 402 (1st Cir.1990).

 The repeated "sick bitch" comment seems to us just the kind of verbal conduct that it would *not* be reasonable to expect an employee to base suit on the first time it occurred. It is obvious that a single, isolated such comment could not reasonably be thought to constitute sexual harassment or to cause a harm sufficiently great to repay the expense of suit. But if the comment were repeated daily over a period of years its cumulative effect would be much greater, though whether it would constitute actionable sexual harassment would still be in doubt, as we shall shortly see.

So we find ourselves in respectful disagreement with the district judge's decision to cut off of the evidence in 1991—and also with the suggestion that the plaintiff's use of dirty language shows that she was not harmed by her coworker's use of such language. Bearing in mind that summary judgment is not the proper setting in which to resolve disputed questions of fact, we point out that there is no principle of law, or for that matter of psychology, that decrees that the use of bad language automatically demonstrates the user's insensitivity to like language directed against himself or herself. The use may be defensive; may be playful rather than hostile or intimidating; may be colored by tone or body language; as we stressed in *Carr,* may be done in a placating, conciliatory, or concessive manner in an effort to improve relations with hostile or threatening coworkers. 32 F.3d at 1011; see also *Zorn v. Helene Curtis, Inc.,* 903 F.Supp. 1226, 1242 n. 17 (N.D.Ill.1995); cf. *Swentek v. USAIR Inc.,* 830 F.2d 552, 557 (4th Cir.1987).

 We find greater merit in the district judge's third ground, that "sick bitch"—and, we add, the other verbal abuse, and the obscene gesture, that Bullock directed toward Galloway—was, in context, not a sex- or gender-related term. Obviously if Bullock had merely called Galloway a "loonie" or "nut case" or "whacko" this would not be abuse actionable under Title VII, because it would

have nothing to do with Galloway's being a woman or belonging to a different gender from her tormentor. It would not be *sex* discrimination. *Reed v. Shepard,* 939 F.2d 484, 490 (7th Cir.1991); *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1196 (4th Cir.1996); *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982); *Vandeventer v. Wabash National Corp.,* 887 F.Supp. 1178, 1181 and n. 2 (N.D.Ill.1995). It is true that "bitch" is rarely used of heterosexual males (though some heterosexual male teenagers have taken recently to calling each other "bitch"). But it does not necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or maternal characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect. In its normal usage, it is simply a pejorative term for "woman." If Bullock had called Galloway a "sick woman," and a similarly situated male coworker a "sick man," there would be no ground for an inference of sex discrimination. And, likewise, were there a similarly situated male worker to Galloway whom Bullock called a "sick bastard" while calling her a "sick bitch," we do not think it would be rational for a trier of fact to infer that Bullock was making the workplace more uncongenial for women than for men. Even if Bullock didn't abuse any men, there would not be an automatic inference from his use of the word "bitch" that his abuse of a woman was motivated by her gender rather than by a personal dislike unrelated to gender.

*Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994), suggests, in apparent though not real tension with our analysis of "bitch," that the use of the terms "dumb fucking broads" and "fucking cunts" are inherently terms of sexual harassment unless, perhaps, the harasser abuses men in terms that also are gendered (a condition not satisfied in *Steiner,* because the harasser called men "assholes"). The terms "fucking broads" and "fucking cunts" are more gendered than "bitch"; and there was much else in the case to establish the sexual character of the harassment. We do not suggest, moreover, that the word "bitch" can *never* figure in a sex discrimination case. When a

word is ambiguous, context is everything. The word "bitch" is sometimes used as a label for women who possess such "woman faults" as "ill-temper, selfishness, malice, cruelty, and spite," and latterly as a label for women considered by some men to be too aggressive or careerist. Beverly Gross, "Bitch," *Salmagundi Quarterly,* Summer 1994, p. 146. In contrast to the use of the word in *Burns v. McGregor Electronic Industries, Inc.,* 989 F.2d 959, 963–66 (8th Cir. 1993), there is very little indication that it carried any of these connotations as used by Bullock of Galloway.

█ Even if this is wrong and there is some sexual innuendo or gender slur in "sick bitch" that we are missing, Galloway's case falls under the bar of our *Baskerville* decision. There, as we have said, we created a safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex. Bullock repeated "sick bitch" to Galloway some indefinite number of times over a period of four years in the context of a failed sexual relationship not contended to have been coerced or to have been otherwise an incident of sexual harassment. See *Huebschen v. Dept. of Health & Social Services,* 716 F.2d 1167, 1172 (7th Cir.1983). The repetition of the term together with the other verbal conduct that is alleged reflected and exacerbated a personal animosity arising out of the failed relationship rather than anything to do with a belief by Bullock, of which there is no evidence, that women do not belong in the work force or are not entitled to equal treatment with male employees. In these circumstances no inference could be drawn by a reasonable trier of fact that Bullock's behavior, undignified and unfriendly as it was, created a working environment in which Galloway could rationally consider herself at a disadvantage in relation to her male coworkers by virtue of being a woman. The case was therefore properly dismissed.

AFFIRMED.