**Danny WILCOX, Plaintiff,**

v.

**DOME RAILWAY SERVICES, a DIVISION OF ST. LOUIS REFRIGERATOR CAR CO., a foreign corporation, and a wholly owned subsidiary of Anheuser-Busch Companies, Inc., Defendant.**

**No. 95–CV–700–WDS.**

United States District Court,
S.D. Illinois.

Sept. 15, 1997.

---

Allen D. Allred, Thompson Coburn, Belleville, IL, David A. Dick, Thompson Coburn, St. Louis, MO, for defendant.

Lee W. Barron, the Lakin Law Firm, Wood River, IL, for plaintiff.

### MEMORANDUM & ORDER

STIEHL, Senior District Judge.

Before the Court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Previously, on August 16, 1996, defendant filed a summary judgment motion and advanced essentially the same arguments as it advances in the current motion. Defendant, in its original motion for summary judgment acknowledged that Count I avers three claims for relief pursuant to Title VII: (1) same sex hostile work environment sexual harassment; (2) retaliation; and (3) disparate treatment. At the time defendant filed its motion, the case was assigned to United States District Judge Paul E. Riley. Judge Riley prepared a Memorandum and Order docketed August 21, 1996, wherein he denied in part and granted in part defendant's motion for summary judgment. Specifically, Judge Riley found that plaintiff could maintain his claims of same sex hostile work environment sexual harassment and disparate treatment, but could not maintain his claim for retaliation.

Subsequently, on September 9, 1996, a jury was selected to hear the case. Before

the jury was sworn, the parties raised several issues to the Court. Judge Riley, believing it imprudent to decide those issues from the bench, continued the trial, ordered the parties to submit briefs addressing the issues, and discharged the jury.

Less than one month later, for reasons that are not important to this Court's analysis, Judge Riley recused himself from this proceeding. The case was re-assigned by random draw to this Court. The Court then scheduled a status conference for January 24, 1997. At that conference, the Court extended the deadline for filing dispositive motions, in effect allowing defendant to renew its previously filed motion for summary judgment previously ruled on by Judge Riley. On February 7, 1997, defendant filed its motion. Plaintiff has since responded to defendant's motion and, defendant has filed a reply brief.

### BACKGROUND [1]

Plaintiff began working as a mechanic for defendant on January 4, 1977. It appears from the record that plaintiff's service to the company was consistently satisfactory or above throughout most of the employment period leading up to his termination. Also, equally clear from the record is the fact that plaintiff was satisfied with his job until 1990 or 1991. At that time, plaintiff first met Mark Meyers.

Meyers, who usually worked as a painter, worked with plaintiff for three days in defendant's fabrication shop. According to plaintiff on one of those three days, Meyers began telling plaintiff about problems he (Meyers) was having with his girlfriend. Meyers then proceeded to ask plaintiff on a "date," an offer which plaintiff declined. Plaintiff told his co-workers in the fabrication shop about Meyers' offer, and everyone laughed about it. Although plaintiff really believed Meyers

asked him on a date, plaintiff admits he did not in any way feel threatened by the request.

Plaintiff's and Meyers' work schedules were such that they did not have any more contact with each other for several months. The next time the two saw each other, however, the situation changed dramatically. According to plaintiff, Meyers walked by him yelling and making various gestures. These gestures included blowing kisses, rubbing his crotch, acting like he was masturbating, and simulating an act of "oral masturbation." [2] While making these gestures, Meyers remained approximately 30 feet from plaintiff.

Just weeks after this incident, the two had another encounter during which Meyers made similar gestures at plaintiff. After this second encounter, when Meyers gestured to plaintiff, plaintiff responded by calling Meyers a "nut" and told him to "stay away." According to plaintiff, Meyers laughed and walked away. Plaintiff further claims, that at that point he thought Meyers was a homosexual.

Throughout 1992, the situation continued to degenerate to the point where Meyers, at least weekly, and perhaps even daily, continued to exhibit similar offensive behavior toward plaintiff. At one point, plaintiff claims Meyers physically threatened and screamed at him,[3] and plaintiff complained to the plant manager. Apparently the plant manager took no action, and according to plaintiff, the harassment increased to as much as four or five times a day; it even took place when the two men, who were on different shifts, would pass each other during shift changes.

Plaintiff asserts that he complained to the plant "lead man," and then to the general car foreman, Ron Crites. According to plaintiff, Crites told plaintiff that he was a "big boy"

---

**1.** At the summary judgment stage, the Court must view the facts in a light most favorable to the non-moving party. *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1378 (7th Cir.1985). Here, however, plaintiff has failed to articulate a coherent statement of the facts in this case. Nevertheless, it does not appear that plaintiff disputes defendant's statement of factual background. Accordingly, the Court will rely primarily upon defendant's statement of the factual background.

**2.** The parties refer to "oral masturbation," which the Court assumes to be fellatio.

**3.** Plaintiff, who at that time was approximately 6 feet tall and weighed 280 pounds, would later admit in deposition testimony that he never felt that the much smaller Meyers, who at the time was approximately 5'8" and weighed 160–170 pounds, could harm him physically.

and to take care of the problem himself. Sometime in 1993, plaintiff discussed the harassment with defendant's manager, Steve Prockovic. Despite these complaints, the company took no action against Meyers.

In 1994, the situation was coming to a head. The record reveals that defendant's manager, Mark Winkles, overheard managers Crites and Prockovic joking about Meyers harassing plaintiff. According to Winkles, Crites and Prockovic laughed that plaintiff was scared of Meyers. Prockovic joked: "Maybe they both are fags." In October 1994, plaintiff claims Meyers was heard to suggest that he would give plaintiff a dildo as a present for Christmas. At this point, plaintiff, having received no assistance from management and having previously been told to take care of it himself, went on the offensive. Every time plaintiff saw Meyers, he told "him [Meyers] he was a no good queer faggot, [and] to stay away." According to plaintiff, he "got very hostile, and, it worked." At this point, Meyers turned the tables and complained to Crites about plaintiff's insults. According to plaintiff, in November, Crites told him to leave Meyers alone.

Shortly thereafter, on November 23, 1994, plaintiff and several co-workers were in the locker room showering. Meyers entered the room and threw kisses and winked at plaintiff from across the room. Meyers then grabbed his crotch and made kissing sounds at plaintiff while plaintiff was still in the shower room. After this incident, plaintiff complained to manager, Bill Raney. On December 2, 1994, Raney prepared a memo recommending "Meyers be discharged for continuing to create a hostile work environment for a fellow employee."

On December 3, 1994, deciding he had enough, plaintiff followed Meyers into the locker room to confront him. Meyers again made obscene gestures and blew kisses at plaintiff. A physical altercation occurred that was quickly broken-up by other employees. After an investigation into the incident, defendant's management decided to termi-nate the employment of both men for fighting, and informed plaintiff of its decision in a meeting held on December 28, 1994.

On January 9, 1995, plaintiff filed an information sheet with the Illinois Department of Human Rights and signed his formal Illinois Human Rights Charge on March 31, 1995. Unable to resolve this situation through administrative channels, plaintiff commenced this action on September 20, 1995. In his complaint,[4] plaintiff raised three specific claims for relief pursuant to Title VII:(1) same-sex hostile work environment sexual harassment; (2) retaliation; and (3) disparate treatment. Presently before the Court is defendant's motion for summary judgment.

## *ANALYSIS*

### A. SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the a affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether a district court properly granted summary judgment "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Adm'rs Inc. v. Life Ins. Co. of North Am.,* 753 F.2d 1373, 1378 (7th Cir.1985). In instances in which "inferences contrary to those drawn by the trial court might be permissible," a district court's grant of summary judgment must be reversed. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). Once a motion for summary judgment has been made and properly supported, however, the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of a material fact for trial. *See* Rule 56(e); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983) (noting that "a bare contention that an issue of fact exists is insufficient to raise a factual issue"). Although a requisite, the existence

---

4. Plaintiff's complaint originally contained two counts. Count II was previously dismissed and plaintiff has made no effort to reinstate the count. Only Count I of the complaint remains, and is thus the sole focus of the Court's analysis.

of a factual dispute is not, standing alone sufficient to bar summary judgment. It is well settled that a "factual dispute does not preclude summary judgment unless ... the disputed fact is outcome determinative under the governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), *cited in Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986).

Courts should, however, apply the general standard for summary judgment with "added rigor" in employment discrimination cases in which intent is the central issue. *McCoy v. WGN Continental Broad.,* 957 F.2d 368, 370–71 (7th Cir.1992). Nevertheless, Fed. R.Civ.P. 56(c) mandates summary "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## B. SAME-SEX HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

■ Since defendant's filing of its motion for summary judgment, the Seventh Circuit decided the cases of *Doe v. City of Belleville, Ill.,* 119 F.3d 563 (7th Cir.1997) and *Johnson v. Hondo, Inc.,* 125 F.3d 408 (7th Cir.1997). These cases establish that under certain circumstances, a plaintiff may maintain a Title VII claim based on same-gender sexual harassment. Defendant offers several arguments in support of its motion for summary judgment. First, defendant claims plaintiff cannot show that Meyer's conduct was motivated by plaintiff's gender. In other words defendant believes plaintiff will be unable to prove that his gender played any role in the harassment. The analyses set forth in *Doe* and *Johnson* are instructive. Specifically, in *Doe,* the court noted that:

It is not clear why such proof is needed when the harassment has explicit sexual overtones, however, Arguably, the content of that harassment in and of itself demonstrates the nexus to the plaintiff's gender that Title VII requires.... The harassment of which [plaintiff] complains, although certainly disagreeable, does not fall into the category of "general unpleasantness" or generic "shoptalk." It was targeted specifically at [plaintiff] and it was explicitly sexual. It both revolved around his gender and specifically alluded to sexual conduct ...'. Proof that the harasser was motivated to target (or in practice did target) one gender and not the other may be necessary where the harassment is not on its face sexual, as [previously] discussed, but such proof would seem unnecessary when the harassment itself is imbued with sexual overtones.... Thus, so long as the environment itself is hostile to the plaintiff because of [the plaintiff's] sex, why the harassment was perpetrated (Sexual interest? Personal vendetta? Misguided humor? Boredom?) is beside the point.

*Id.* at 576–78. Admittedly, the facts in *Doe* were significantly more egregious than the facts of this case. Specifically in *Doe,* one of the plaintiffs was denigrated by his co-workers because he wore an earring; a piece of jewelry that his co-workers appeared to consider feminine. *Id.* at 566–67. Doe's co-workers first called him fag or queer. Eventually, the name calling progressed to the point where Doe's gender was questioned on a daily basis, he was regularly threatened with sexual assault in the woods, and his genitals were grabbed in an ostensible effort to determine his gender. *Id.* at 567. In finding that a trier of fact could reasonably conclude that this campaign of torment was in fact a campaign of sexual harassment, the court noted that "[t]he experience was ... humiliating in a deeply personal way, as only sex acts can be." *Id.* at 580 (citations omitted). The harassers' "intent was to humiliate [plaintiff] as a man." *Id.* As a result, the court found that the defendant harassed Doe because of his gender, and ultimately concluded that same-sex harassment could be proved by the explicit sexual character of the harassment. *Id.* at 580.

In *Johnson,* plaintiff Johnson and co-worker Hicks were terminated for fighting. *Id.* at 411. Subsequently, Johnson sued his employer under Title VII claiming that he was the victim of same-sex hostile work environment sexual harassment. *Id.* at 410. Specifically,

Hicks frequently told Johnson that he (Hicks) was "going to make [Johnson] suck [his (Hick's) ] dick." *Id.* at 410. In return, Johnson call Hicks a "punk," "faggot," "fag," and "s.o.b." *Id.* at 410. Hicks also apparently made similar comments to two other male co-workers. *Id.* Hicks persistently would brush-up against Johnson. He would also grab his own crotch and state that he was going to get his dick sucked. He also made comments about Johnson's girlfriend and alluded to having "her suck his dick." *Id.* at 411. Eventually, the two men confronted each other off the company's premises. A fight ensued, and ultimately, the company terminated the employment of both men for fighting.

In affirming the district court's grant of summary judgment in favor of the company, the court in *Johnson* held that Hicks' comments were not based on Johnson's gender. Rather, the comments were "simply expressions of animosity or juvenile provocation ...." *Id.* at 412. In support of its holding, the court noted:

> Most unfortunately, expressions such as "fuck me," "kiss my ass," and "suck my dick," are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference—even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture.

*Id.* The court concluded that the harassment, although imbued with sexual terminology, was not sexual in nature, but rather was mere male aggression. *Id.* at 412–13.

As a result of *Doe* and *Johnson*, the Seventh Circuit has instructed that a plaintiff may maintain a viable claim under Title VII for same-sex hostile work environment sexual harassment. However, while *Doe* indicates that harassment so imbued with sexual overtones is likely based on the gender of the victim, *Johnson* restricts such an expansive interpretation and makes a distinction between sexual harassment and mere hostile aggression. Thus, what was present in *Doe* and missing from *Johnson*, is the element

linking the harassment to the plaintiff's gender. Specifically, in *Doe*, the plaintiff's gender was questioned on a daily basis as a result of his wearing an earring and his physical appearance; characteristics his co-workers did not consider to be sufficiently masculine.

Similar to the *Doe* case, unlike the situation in *Johnson*, here there is at least a question of fact as to the genesis of the harassment of plaintiff by Meyers. Specifically, there are at least two distinguishing facts in this case. First, Meyers asked plaintiff out on a "date" and only after plaintiff declined, began his harassing behavior. The second is that plaintiff was the sole target of Meyer's harassment, unlike in *Johnson*, where there was evidence that the harasser also targeted others.

■ Therefore, in this case, summary judgment is not appropriate because there is a question of fact as to whether the harassment of plaintiff was imbued with sexual overtones because of plaintiff's gender, or whether it was merely aggressive, harassing behavior which used sexual terminology. That is, was this just a personal grudge match between male employees or was this truly sexual harassment under Title VII. Of course, "in order to establish a viable hostile environment claim, a plaintiff must tender evidence permitting of the inference both that a reasonable person would have perceived the environment as abusive and that he actually experienced it as such." *Id.* at 594 (citations omitted). Here, plaintiff has presented evidence sufficient to raise such inferences. Accordingly, plaintiff is entitled to present his claim to the trier of fact.

## C. RETALIATION

■ Defendant also seeks summary judgment on plaintiff's claim of retaliation. Again, *Doe* provides guidance. Specifically, "[i]n order to make out *a prima facie* case of retaliation under Title VII, a plaintiff must offer evidence that he engaged in a protected activity that resulted in an adverse employment decision." *Doe*, at 596, *citing Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 708 (7th Cir.1995); *Johnson*, at 415 (noting that the

plaintiff "was fired for fighting with Hicks and not in retaliation for his harassment complaints"). In this case, plaintiff has failed to claim, much less offer evidence, that he was engaged in a protected activity. As in *Johnson*, plaintiff admits that he was fired for fighting, which obviously is not a protected activity. *See id.* A different situation arises where a plaintiff complains of sexual harassment and the employer retaliates by terminating the employment because of the complaints. Of course, that is not the situation here, and defendant is therefore entitled to summary judgment on plaintiff's retaliation claim.

## D. Disparate Treatment

■ Plaintiff has also asserted a disparate treatment claim against defendant. Specifically, plaintiff claims that defendant treated him differently from a similarly situated female employee. Defendant offers several arguments in response to plaintiff's claim of disparate treatment. First, defendant argues that plaintiff failed to exhaust the administrative prerequisites to filing this suit. According to defendant, plaintiff alleged sexual harassment in his administrative charge of discrimination, but failed to allege disparate treatment. As a result, defendant argues that plaintiff may not maintain a suit on the disparate treatment claim.

■ A Title VII plaintiff may not bring claims in a lawsuit that were not included in his administrative charge. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). However, if a plaintiff can demonstrate that the claim was adequately encompassed within the charge, the plaintiff may be able to maintain the claim in litigation. Specifically, the Court must examine whether: (1) there is a reasonable relationship between the allegations in the charge and the claim in the complaint; and (2) the claim in the complaint could reasonably have grown out of an administrative investigation of the specific allegations of the charge. *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir.1995), *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). In *Cheek,* the Seventh Circuit explained that "claims are not

alike or reasonably related unless there is a factual relationship between them." *Id.* at 501. In other words, "the EEOC Charge and Complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals."* *Id.* Thus, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Id.*

Applying the two-part test described above, the Court finds plaintiff's claim of disparate treatment was not adequately encompassed within the charge. Regarding the first element of the test, plaintiff's allegations in the charge are simply unrelated to a claim of disparate treatment. Specifically, plaintiff entirely failed to: (1) refer to defendant's conduct as disparate; (2) mention a situation where a similarly situated female was treated differently; and (3) discuss how his discipline was more severe because he is a man. Even viewing the facts in a light most favorable to the non-moving party, it appears less than clear from the charge that plaintiff intended the agency to investigate the allegations of disparate treatment. As a result, because plaintiff failed to make even the slightest reference in his charge to the claim of disparate treatment, plaintiff has failed to preserve the claim for litigation, *see Alexander,* 415 U.S. at 47, 94 S.Ct. at 1019, and defendant is therefore entitled to summary judgment on plaintiff's disparate treatment claim.

## E. Statute Of Limitations

■ Finally, defendant raises a statute of limitations argument. Specifically, a plaintiff has 300 days after the occurrence of the allegedly harassing conduct to file his charge with the agency. Defendant argues that plaintiff may not recover for any acts of harassment that occurred outside this 300 day period. *See Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164 (7th Cir.1996). However, while this is an accurate statement of the law, a plaintiff may nevertheless recover for acts occurring outside the 300 day period if those acts were part of an on-going pattern of harassment that, at the time and taken in isolation, did

not appear to be actionable as sexual harassment. *Id.*

In this case, it reasonably appears that plaintiff recognized the nature of the harassment well before the filing of the charge. In fact, the charge was filed only after his termination for fighting, despite the fact that plaintiff had for years allegedly complained to his superiors that he was being harassed. As a result, the Court finds that plaintiff is not entitled to recover damages for acts of harassment occurring prior to May 25, 1994.

█ Apparently anticipating this outcome,[5] plaintiff argues that while he may not be able to recover for those acts occurring prior to May 25, 1994, he nevertheless is entitled to introduce evidence of the conduct. Again, *Galloway* provides guidance:

> The most difficult case arises when a long-continued series of harassing acts definitely *are* a series, a pattern, and not merely a set of discrete events, yet it was evident long before the plaintiff finally sued that she was the victim of actionable harassment. It seems to us that in such a case, while she can still sue provided that the last act of harassment occurred within the statute of limitations, she cannot reach back and base her suit also on conduct that occurred outside the statute of limitations; for she has no excuse for waiting that long.
>
> . . .
>
> The principle that we extract from this discussion and that we think organizes the case law on continuing violations under Title VII is that the plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations.

█ *Id.* at 1167 (citations omitted). The situation described in *Galloway* is exactly the situation presented in this case. Here, there was obviously a long-continued series of harassing acts that constituted a pattern. However, it was evident long before plaintiff sued that this conduct was objectively sexually harassing and plaintiff subjectively perceived it as sexually harassing. One need look no further than the frequency and the nature of plaintiff's complaints to his supervisors. As a result, plaintiff may not reach back and base his suit on conduct occurring so long before he filed his charge. *Galloway* makes clear that plaintiffs have a legal avenue, through Title VII, and a responsibility to effectuate an end to the harassment. Therefore, plaintiff may only base his lawsuit on conduct occurring within 300 days of filing his charge. Plaintiff may still introduce evidence of Meyer's request for a date, as this request, in and of itself, was not sexually harassing.

### CONCLUSION

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendant's motion for summary judgment. The Court **GRANTS** that portion of defendant's motion seeking summary judgment on plaintiff's claims of retaliation and disparate treatment. The Court **DENIES** that portion of defendant's motion seeking summary judgment on plaintiff's same-sex hostile work environment sexual harassment. Finally, the Court **GRANTS** that portion of defendant's motion seeking to bar the introduction of evidence and to bar recovery for any acts of harassment occurring prior to May 25, 1994.

**IT IS SO ORDERED.**

---

**5.** In open court before Judge Riley, plaintiff's counsel acknowledged the likelihood that plaintiff would be unable to recover for conduct occurring before May 25, 1994. *See* August 21, 1996, Tr. at 42.