**Suzanne K. LINDBLOM, Plaintiff,**

v.

**THE CHALLENGER DAY PROGRAM, LTD., et al., Defendants.**

**No. 97 C 1797.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 18, 1999.

William B. Thompson, Wheaton, IL, for Plaintiff.

Sheryl Lynn Jaffee, Marc Z. Samotny, Patzik, Frank & Samotny, Ltd., Chicago, IL, James T. Rohlfing, Friedman, Sinar & Rohlfing, Chicago, IL, for Defendants Suzanne K. Lindblom, Challenger Day Program, Ltd.

### MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District Judge.

Plaintiff Suzanne Lindblom has brought this action against her former employer, The Challenger Day Program, Ltd. ("Chal-

lenger") and Eleanor Flynn ("Flynn"), Challenger's executive director, alleging sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and defamation per se and per quod, Challenger and Flynn have moved for summary judgment on all counts. Defendants have also moved to strike various materials submitted by plaintiff in opposition to defendants' summary judgment motion. For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

## FACTS

The facts assumed to be true for purposes of this motion are as follows.[1] Plaintiff, Suzanne Lindblom, was employed by defendant, The Challenger Day Program, Ltd., as a teacher from December 1, 1992 through August 27, 1996. Challenger is a school for severely emotionally disturbed and behaviorally disordered children. Challenger has two administrators, defendant Eleanor Flynn, the executive director, and Christopher Raspante, Challenger's principal.

In 1992, plaintiff was sexually harassed by a Challenger coworker. Def. Memo., Exhibit E. She complained to the administration. Def. Memo., Exhibit C, Lindblom Depo. at 261. The administration met with Lindblom and the alleged harasser, and the administrators verbally reprimanded the harasser. *Id.* By his own choice, the alleged harasser eventually left Challenger. *Id.*

Lindblom alleges that subsequently, she was harassed by another Challenger coworker, Robert Salmons ("Salmons"). Salmons co-taught with Lindblom at Challenger from August 1994 until August 27, 1996. Salmons had no supervisory authority over Lindblom.

On August 24, 1995, Salmons hosted a party at his parents' home. Salmons invited Lindblom to the party, and Lindblom accepted the invitation. The party was not sponsored by Challenger. Challenger did not pay for the party and no Challenger students, parents, or administrators attended the party. At the party, Salmons allegedly touched and fondled plaintiff against her will.

After the party, Lindblom alleges, Salmons began to behave inappropriately in the classroom. She asserts that on numerous occasions, Salmons stared at her while she was teaching a lesson or reading to the class. He also stood close to Lindblom and entered her "private space". Over the course of one year, on approximately five occasions, Salmons leaned or bent down and steadied himself by placing his hand on Lindblom's knee, just above the kneecap, while speaking to Lindblom quietly. Over that same time period, Salmons, on ten occasions, touched Lindblom's shoulder to get her attention. In addition, on Mondays, Salmons often asked Lindblom about her weekend. Salmons once asked Lindblom if she would attend another one of his parties. Salmons' conduct made plaintiff uncomfortable.[2]

In October 1995, for the first time, plaintiff informed Raspante that she had been "sexually harassed" by Salmons at his party, but she told Raspante that Salmons had never sexually harassed her at work. She met with Raspante again in February and July of 1996. On these occasions she complained to Raspante of inappropriate conduct by Salmons in the classroom. She told him that Salmons stared at her and made her uncomfortable. She also told Raspante about Salmons' conduct in putting his hand on her knee, tapping her on

---

1. Unless stated otherwise, the facts are derived from the defendants' local rule 12(M) statement and plaintiff's local rule 12(N) response. Plaintiff's 12(N) response frequently fails to provide precise record citations as the rule requires. Where the court has been unable to find evidence supporting the existence of a factual dispute, it has had no choice but to deem defendants' 12(M) recitation as admitted.

2. Plaintiff cited no evidence suggesting that she ever told Salmons to stop these behaviors or that she told him that he was making her uncomfortable.

the shoulder to get her attention, and asking her about her weekend. She told Raspante "how much it was bothering [her] working with Bob [Salmons] in the classroom." Def. Memo., Exhibit C, Lindblom Depo. at 264. In the February meeting, plaintiff asked Raspante if she could be transferred to another classroom. Raspante informed her that no positions were available. *Id.* at 248. In July 1996, plaintiff asked Raspante if she could be transferred to Bridge View Day School, Inc., Challenger's sister school, because she was uncomfortable working with Salmons. *Id.* Raspante said he would see what he could do and said that she should "hang in there". *Id.*

Plaintiff met with Flynn on August 1, 1996. During that meeting she told Flynn for the first time about Salmons' conduct at his party and informed Flynn that she was uncomfortable working with Salmons. In her conversation with Flynn, plaintiff "told [Flynn] I couldn't work within the classroom with [Salmons]. I don't know exactly how I said it. I said it was just a terrible environment." Def. Memo., Exhibit C, Lindblom Depo. at 261. Lindblom did not give Flynn specifics about her complaints, i.e., the knee touching, staring, shoulder touching, and the questions about her weekend. *Id.* at 262. Flynn told Lindblom she needed to handle the situation. She suggested that Lindblom seek counseling to help her deal with it. *Id.* at 406. Lindblom told Flynn that she would not return to Challenger if Salmons was not removed from her classroom. *Id.* Lindblom testified that Flynn then asked plaintiff how Flynn could know that the party incident actually happened. *Id.* Lindblom stated that Flynn said Lindblom "enticed" the party incident. *Id.* at 406.

Plaintiff received annual performance evaluations from Challenger. In plaintiff's August 1994 and August 1995 evaluations, Lindblom was informed that she needed to demonstrate improvement in her professional image and presentation, including her attire. Three times plaintiff was advised-twice in writing and once orally-that her attire was inappropriate for work and

that she was dressed unprofessionally. *Id.* at 282–284. On June 15, 1995, plaintiff attended a school event in a summer dress with a translucent skirt. *See* Def. Memo., Exhibit C, Lindblom Depo. at 280, 282. Raspante told her that her attire was unacceptable. *See* Def. Memo., Exhibit B–3; Def. Memo., Exhibit C, Lindblom Depo. at 280, 282. Raspante told her to leave to obtain a slip, and he covered her parent-teacher conferences while she was away. *See* Def. Memo., Exhibit B–3; Def. Memo., Exhibit C, Lindblom Depo. at 280, 282. Raspante sent Lindblom a memo documenting this incident on June 15, 1995. *See* Def. Memo., Exhibit B–3; Def. Memo., Exhibit C, Lindblom Depo. at 280, 282. On another occasion, plaintiff wore a sweatshirt and shorts that defendants viewed as inappropriate for work. *See* Def. Memo., Exhibit C, Lindblom Depo. at 282. On June 3, 1996, Raspante sent Lindblom a typewritten memo in which he documented a May 20, 1996 meeting with her about her attire in which he told her that she dressed too casually for work. *See* Def. Memo., Exhibit B–3; Def. Memo., Exhibit C, Lindblom Depo. at 280, 282. Challenger's personnel policies and procedures manual provides that employees must dress professionally and appropriately.

Challenger reprimanded Lindblom for tardiness on several occasions between October 1995 and August 1996. She was required to be at work at 7:45 a.m. Nonetheless, between September 1995 and August 1996, plaintiff was late for work six times because of oversleeping, traffic or because she ran errands before work. *Id.* at 275–276. Twice she was late by more than an hour; Salmons and another teacher assumed Lindblom's duties in the classroom in her absence. On both occasions, Lindblom was docked a half day's pay. She received written warnings and a verbal warning.

Lindblom's final performance evaluation was given to her on August 6, 1996. The evaluation stated that although her perfor-

mance of her academic instruction duties and behavior management of her students was satisfactory, plaintiff's tardiness and lack of improvement in her professional image "indicated an increasing difficulty in meeting the professional expectations of Challenger Day School." Def. Memo., Exhibit E. Plaintiff's employment contract was not renewed, and, consequently, she was terminated on August 27, 1996. The reasons Challenger gave for her termination were chronic tardiness and lack of professionalism. Lindblom believed that at all times she was meeting Challenger's reasonable expectations and performing her responsibilities as a teacher satisfactorily.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard is applied with "added vigor in employment discrimination cases, in which intent and credibility are crucial issues." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on the motion, the court will not resolve factual disputes or weigh conflicting evidence. *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir.1996). The evidence is considered in the light most favorable to the nonmovant and all justifiable inferences are resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the nonmovant must produce "spe-cific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## SEXUAL HARASSMENT

Challenger seeks dismissal of plaintiff's Count I, Sexual Harassment, contending that her complaint goes beyond the scope of her EEOC charge and that she fails to submit evidence that could support a finding of a hostile work environment.

### A. Procedural Requirements—The Scope of the EEOC Charge

Plaintiff seeks to charge Challenger with repeated instances of sexual harassment over a one-year period. To facilitate EEOC investigations and to give notice to defendants of the charged conduct, Title VII required Lindblom to file an EEOC charge that encompassed *all* the claims she plans to raise in her complaint to the district court. *Cheek v. Western and So. Life Ins.*, 31 F.3d 497, 499 (7th Cir.1994). Lindblom's EEOC charge, in toto, recites:

> Challenger and Bridgeview Schools have, through Executive Director–Agent Eleanor Flynn and Educational [sic] Christopher Raspante, sexually discriminated aand [sic] retaliated respecting the terms and conditions of my employment with Respondent Schools. At all times while I worked with Respondent I performed my job in keeping with and exceeding Respondent's legitimate expectations.
>
> In August 1995 I was sexually touched and fondled against my will by Robert Salmons (off premises) who was assigned by Flynn and Raspante to be my co-teacher. I reported this incident to Raspante in October 1995 and requested that Salmon [sic] or I be transferred so I would not have to experience this sexual related treatment again, I asked Raspante again in March 1996 and then again in May 1996 for the above transfer, but he refused. In May 1996 I pointed out that there was a job for which I was qualified in the sister school, Bridgeview, to which I would

accept a transfer to escape the hostile environment sexually where I was with Salmon [sic], but at Raspante's specific direction I contacted Flynn. In a meeting in her office on 8.8.96 she acknowledged awareness of my complainte [sic] against Salmon [sic], but stated that any such treatment was my fault for being prooocative [sic] and encouraging of sex discrimination by males and that I could not have a transfer to run-away-from-my-problems. I was retaliated against further by being discharged on or about 8.13.96. At that time, Flynn told me to not disclose the above events or I would not get a favorable reference from future inquiring employers. Further Flynn and Raspante have refused to pay me a bonus and profit-sharing distribution which is due, because I complained about the sexual harassment.

The court must determine whether the charge provides sufficient notice to defendants of the kind of conduct being charged. *Cheek*, 31 F.3d at 500. Defendants contend that it does not because the charge focuses on only one incident, the off-site party. In determining whether a Title VII complaint is within the scope of the EEOC charge, a court must determine whether the complaint "is like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976).

While the charge admits of some slight ambiguity in referring to "the hostile environment sexually where I was with Salmon [sic]," the only incident of sexual harassment it identifies is the incident at Salmons' party. Only an exceedingly generous reading of this charge could put anyone on notice that plaintiff was complaining about repeated touchings in the classroom, and it is a reading too generous to impute to defendants or to the EEOC. To read this charge to encompass the kind of repetitive conduct of which plaintiff now complains would entirely frustrate the purpose of the charge requirement, and the court will not do so.

For the reasons stated below, however, even if plaintiff's current complaints were found to be within the scope of her EEOC charge, plaintiff's sexual harassment claim could not succeed as plaintiff has failed to raise a genuine issue of material fact.

## B. *Sexual Harassment*

Lindblom claims that Challenger subjected her to a hostile work environment in violation of Title VII by forcing her to work with a coworker, Salmons, who was sexually harassing her. Lindblom alleges that, over the course of one year, Salmons did the following: he stared at her while she was teaching; he touched her knee five times when he bent down to talk with her quietly; he touched her shoulder ten times to get her attention; he stood too close to her; and he questioned her about her weekend. She also alleges that he once fondled her at a private party.

Title VII is violated when "discrimination based on sex ... create[s] a hostile or abusive work environment." *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. Dec.28, 1998), *quoting Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). However, workplace harassment is actionable only if it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399, *quoting Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982). In determining whether an employee's work environment was hostile within the meaning of Title VII, the court considers a variety of factors, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The focus is on the totality of the circumstances and, thus, no single factor is dispositive. *Id.* The events must be

so pervasive and severe as to create an environment that was not only subjectively hostile for Lindblom, but also that a reasonable employee in Lindblom's position would have perceived as hostile or abusive. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367; *Saxton*, 10 F.3d at 534. If the conduct was not so severe and pervasive as to create an objectively hostile work environment, the conduct "is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. 367.

Plaintiff's allegations have much in common with those in a recent case decided by the Seventh Circuit, *Adusumilli, supra.* In *Adusumilli*, the plaintiff, an administrative assistant at a police station, complained of a hostile work environment. She alleged that she was subjected to sexual joking and sexual comments by coworkers. She suffered several incidents in which coworkers stared at her breasts. She also experienced unwanted physical contact in the form of a touch on her upper arm, two instances of poking at her fingers, and one instance of poking at her buttocks. *Adusumilli*, 164 F.3d at 357. The Seventh Circuit held that the alleged conduct was "too tepid or intermittent or equivocal to make a reasonable person believe that [the plaintiff had] been discriminated against on the basis of her sex." *Adusumilli*, 164 F.3d at 362, *quoting Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996).

Similarly, in *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993), the plaintiff complained of a hostile work environment caused by an overly amorous supervisor. On numerous occasions, the supervisor asked her for dates, called her a dumb blond, and put his hand on her shoulder. He attempted to kiss the plaintiff at a bar, and, on two occasions, he tried to kiss her in her office. The supervisor even placed an "I love you" sign in her work area. The Seventh Circuit held that these incidents did not amount to actionable sexual harassment because they were not sufficiently pervasive and severe from an objective perspective. *Id.* at 337. *See*

*also McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473, 479–80 (7th Cir. 1996) (holding that three sexually suggestive and offensive comments over a three-month period did not unreasonably interfere with the work environment from an objective perspective).

Lindblom's allegations, taken as true, fail to demonstrate harassment any more pervasive or severe than that those found insufficient in these other Seventh Circuit cases. Accordingly, defendants' motion for summary judgment on Lindblom's claim of hostile work environment is granted.

## RETALIATION

Challenger moves for summary judgment on plaintiff's retaliation claim. According to the facts as put forward by plaintiff, plaintiff's employment contract was terminated five days after she complained to Flynn of the problems she was having with Salmons. According to Lindblom, Flynn blamed Lindblom for her problems with Salmons and took no action on her behalf.

To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989).

The question of whether Lindblom complained of Salmons' conduct in the workplace, rather than his conduct at his party, may be relevant to the issue of whether Lindblom engaged in protected expression. Lindblom asserts that she told Flynn about Salmons' conduct at his party and expressed discomfort about working with him in the classroom. It is unclear whether she accused him of sexual harassment in the workplace. However, even if Lindblom complained merely that Salmons' conduct at the party made it uncomfortable for her to work with Salm-

ons, her complaint would, this court believes, constitute protected expression. That is, whether her complaint was sufficient to put Flynn on notice that she needed to intervene to prevent workplace harassment is questionable, but regardless of what plaintiff complained about, defendants were not entitled to punish her for it.

The second and third elements of the prima facie case are easily satisfied in this case. Plaintiff's termination constitutes adverse employment action and, therefore, satisfies the second element. Lindblom satisfies the third element because the temporal proximity of her complaint to Flynn–August 1–and the decision not to renew her contract-August 6–establishes a causal link between her protected expression and the adverse employment action. *Adusumilli,* 164 F.3d at 362 ("It is settled in this Circuit that, 'a plaintiff may establish ... a [causal] link [between protected expression and adverse action] through evidence that the discharge took place on the heels of protected activity.'") (citations omitted) (alterations in original). Thus, Lindblom established a prima facie case of retaliation relating to her termination.

■■■ Challenger has met its burden of coming forward with a legitimate, nondiscriminatory reason for its adverse action, asserting that Lindblom was terminated because of repeated tardiness and lack of professionalism. The record shows that Lindblom was reprimanded for being tardy six times, and on two of those occasions, she was docked a half day's pay for being over an hour late. Def. Memo., Exhibit C, Lindblom Depo. at 275–276. The record also shows that Lindblom was told in her performance evaluations in August 1994 and August 1995 that she needed to improve her professional image. In 1995, she was sent a memo that documented her meeting with Raspante in which they discussed her inappropriate dress at a parent-teacher conference. *Id.* at 280–282. In 1996, she was sent a memo emphasizing what type of attire was appropriate. *Id.* She was also reprimanded in writing and

verbally. It is clear from the record that Challenger did not create these allegations after plaintiff complained. As early as 1994–two years before she was terminated-plaintiff was told in writing that she needed to dress more professionally. As early as September 1995, plaintiff was reprimanded for being tardy. *Id.* at 275–276.

The court has reviewed Lindblom's 12(N) statement in search of evidence that Challenger's justifications for her termination are pretextual. Her 12(N) statement (which does not come close to being in conformity with the court's rules) does not direct the court to any admissible evidence that materially disputes defendants' evidence about her alleged tardiness and lack of professionalism. Under these circumstances, despite the court's concern about the temporal sequence between her complaint to Flynn and her termination, the court must conclude that she has failed to raise a material factual dispute concerning pretext.

With respect to plaintiff's claims that Challenger additionally retaliated against her by refusing to pay her bonus and profit-sharing funds and refusing to transfer her to a different position, Challenger has in each case asserted a good faith reason for its conduct, and plaintiff has failed to offer admissible evidence suggesting that these reasons are pretextual.

Summary judgment on Lindblom's retaliation claim, therefore, must be granted.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to counts I and II. As no federal claims remain, the court declines to exercise jurisdiction over plaintiff's state law claims. *See generally Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716 (7th Cir.1998). Judgment is entered for defendants on counts I and II. Plaintiff's state law claims are dismissed without preju-

dice. Defendants' motion to strike is denied as moot.